AB:OG

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br><br>(1) INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER (917) 373-8075, THAT IS STORED AT PREMISES CONTROLLED BY AT&T<br><br>(2) INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER (929) 240-3000, THAT IS STORED AT PREMISES CONTROLLED BY T-MOBILE | TO BE FILED UNDER SEAL<br><br>SEARCH WARRANT APPLICATION FOR HISTORICAL CELL-SITE INFORMATION<br><br>Case No. 19-MC-383 |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Kin Chung Lee, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I make this affidavit in support of an application for a search warrant for information associated with: (1) a certain cellular telephone assigned call number (917) 373-8075 ("SUBJECT PHONE-1"), that is stored at premises controlled by AT&T, a wireless telephone service provider headquartered at 208 S. Akard St., Dallas, TX 75202 (the "Provider"); (2) a certain cellular telephone assigned call number (929) 240-3000 ("SUBJECT PHONE-2," together with SUBJECT PHONE-1, the "SUBJECT PHONES"), that is stored at premises controlled by T-Mobile, a wireless telephone service provider headquartered at 12920 Se 38th Street, Bellevue, WA 98006 (the "Provider");   The information to be searched is described in the following paragraphs and in Attachment A-1 and Attachment A-2. This affidavit is made in support of an application for a search warrant under 18 U.S.C.

§ 2703(c)(1)(A) to require the Provider to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and have been for approximately 5 and a half years. During my tenure with ATF, I have participated in numerous arson investigations. I have also participated in the execution of search warrants of physical premises, vehicles, and have obtained and analyzed records of historical and have obtained electronic devices for further analysis.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that a violation of Title 18, United States Code, Section 844(i) has been committed by Mamunur Rashid Khan and/or Imran Khan in connection with an arson of Premium Supermarket on February 3, 2019. There is also probable cause to search the information described in Attachments A-1 and A-2 for evidence of this crime, as further described in Attachment B.

## **PROBABLE CAUSE**

5.      I have personally viewed video surveillance footage recovered from the Premium Supermarket[1] located at 1196 Liberty Avenue, Brooklyn, NY 11208 from on or about February 3, 2019 at approximately 10:30 p.m. The surveillance footage shows an individual wearing a white garb, jacket and blue gloves entering the Premium Supermarket with a shopping cart filled with unknown material. Shortly after entering, the individual used a lighter to set fire to the unknown material within the shopping cart, which ignited an ignitable fluid on the floor and the cart, and immediately exited the supermarket at a brisk pace. I am informed by other law enforcement personnel that the resulting fire caused significant damage to the items in the store and the structure of the building.

6.      I have personally observed additional video surveillance footage that shows what appears to be the same individual remove the shopping cart from the rear of a silver or gray Mercedes SUV moments before the time of the arson. I have personally observed additional video surveillance footage that shows what appears to be the same individual return to the silver or gray Mercedes SUV without the shopping cart moments after the time of the arson and drive away from the scene. The surveillance video shows the individual remove the white garb he was wearing and place it inside the vehicle. I have been informed by other law enforcement personnel that there is additional video surveillance recovered which shows additional footage of the individual exiting the vehicle, entering the Premium Supermarket and returning back to the vehicle.

---

[1] The Premium Supermarket sells goods that are manufactured and grown outside the State of New York.

7. I have been informed by other law enforcement personnel that multiple witnesses to the surveillance footage recovered from the Premium Supermarket believed that the individual in the video is the owner of another nearby supermarket, Mamunar Rashid Khan. I am informed by other law enforcement personnel that the witnesses claimed that the owner of this other nearby supermarket had previously complained about the prices of the Premium Supermarket being too low, which negatively affected his business.

8. I have been informed that records from the New York City Police Department show that Mamunar Rashid Khan is also the owner of a gray, GLE 350, Mercedes Benz SUV bearing New York License Plate Number EKJ4787 ("the Vehicle"), which matches the make and type of the vehicle used by the arsonist that is described above.

9. Based upon the information above, law enforcement interviewed Mamunur Rashid Khan. During the interview, I have been informed that a second individual who identified himself as the Mamunar Rashid Khan's son, Imran Khan, attempted to access the Vehicle. I was informed that the second individual looks similar to the person in the surveillance videos described above.

10. On February 5, 2019, Mamunur Rashid Khan told me that he is the owner of SUBJECT PHONE-1. I have been informed by another law enforcement officer that Mamunur Rashid Khan said that his son Imran Khan was the owner of SUBJECT PHONE-2.

11. A comparison of the historical cell-site records for the SUBJECT PHONES will reveal the whereabouts of the SUBJECT PHONES at the time of the arson and help to confirm the identity of the perpetrator.

12. In my training and experience, I have learned that the Providers are companies that provide cellular telephone access to the general public. I also know that providers of cellular

telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

13. Based on my training and experience, I know that the Providers can collect cell-site data about the SUBJECT PHONES. I also know that wireless providers such as the Providers typically collect and retain cell-site data in their normal course of business.

14. Based on my training and experience, I know that wireless providers such as the Providers typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name, address and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as the Providers typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under

investigation because the information can be used to identify the SUBJECT PHONES users or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

15. Based on the foregoing, I respectfully request that the Court issue the proposed search warrant pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

16. I further request that the Court direct the Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody or control. Because the warrant will be served on the Provider, which will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Kin Chung Lee
Special Agent
Burea of ATF

Subscribed and sworn to before me on February 8, 2019

/s/Vera M. Scanlon
Honorable Vera M. Scanlon
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

## **ATTACHMENT A-1**

**Property to be Searched**

This warrant applies to records and information associated with the cellular telephone assigned call number (917) 373-8075, (the "Account"), that are stored at premises controlled by AT&T (the "Provider"), headquartered at 208 S. Akard St., Dallas, TX 75202.

## **ATTACHMENT B**

## **Particular Things to be Seized**

I. **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period February 3, 2019 through February 4, 2019.

    a. The following information about the customers or subscribers of the Account:

        i. Names (including subscriber names, user names and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers, including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identity Identifiers ("IMSI") or International Mobile Equipment Identities ("IMEI");

        vii. Other subscriber numbers or identities (including the registration IP address); and

      viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

  b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

      i. The date and time of the communication, the method of the communication and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

      ii. Information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of a violation of 18 U.S.C. § 844(i) involving Mamunur Rashid Khan and Imran Khan on February 3, 2019.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by _____ and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of _____. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a.  all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of _____ and they were made by _____ as a regular practice; and

b.  such records were generated by _____ electronic process or system that produces an accurate result, to wit:

  1.  the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of _____ in a manner to ensure that they are true duplicates of the original records; and